UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN A. INDIVERI,

       Plaintiff,

    v.

RICHARD MACK, et al.,

       Defendants.

Case No. 17-00595 BLF (PR)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Docket Nos. 41, 71)

Plaintiff, a California state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against medical personnel at the Salinas Valley State Prison ("SVSP"). The Court found the second amended complaint, (Docket No. 38, hereafter "SAC"), stated a cognizable medical claim under the Eighth Amendment and exercised supplemental jurisdiction over the state claim of intentional infliction of emotional distress and ordered Defendants Richard Mack, Dr. K. Kumar, Dr. D. Do-Williams, Dr. J. Dunlap, Dr. L. Gamboa, and Nurse H. Hanter at to file a motion for summary judgment or other dispositive motion. (Docket No. 47.) Plaintiff filed a motion for summary judgment based on Defendants' filing of a waiver of reply. (Docket No. 41, hereafter "Pl.'s MSJ.") Then Defendants filed a motion for summary judgment asserting that they did not act with deliberate indifference to any of Plaintiff's medical needs, his claim for damages for the

1  state claim is barred, his claim for injunctive relief is moot, and they are entitled to

2  qualified immunity. (Docket No. 71, hereafter "Defs.' MSJ"[1]) Concurrently, Defendants

3  filed opposition to Plaintiff's summary judgment motion. (*Id.*) Thereafter Plaintiff filed

4  no further briefing, neither a reply to his summary judgment motion nor an opposition to

5  Defendants' summary judgment motion. To the extent relevant, the Court has considered

6  Plaintiff's motion for summary judgment as his opposition to Defendants' motion.

7  Plaintiff filed his summary judgment motion on April 18, 2018, after Defendants

8  filed a waiver of reply to the second amended complaint on March 21, 2018, and before

9  any responsive pleading had been filed by Defendants. (Docket No. 40.) Plaintiff argues

10  in his motion that Defendants' waiver of reply is a "failure to deny allegations of a

11  complaint [and] constitute[s] a judicial admission." (Pl.'s MSJ at 1.) Plaintiff asserts that

12  "[n]o additional evidence is required to prove the matters so admitted." (*Id.*) However, as

13  Defendants point out, 42 U.S. § 1997e (g) provides that a defendant may waive their right

14  to reply to any action brought by a prisoner, that "such waiver shall not constitute an

15  admission of the allegations in the complaint," and that "[n]o relief shall be granted to the

16  plaintiff unless a reply has been filed." (Defs.' MSJ at 22.) Plaintiff is simply mistaken in

17  asserting that Defendants' waiver of reply constitutes an admission, and that he is entitled

18  to summary judgment based thereon. Furthermore, Plaintiff had an opportunity to file an

19  opposition to Defendants' summary judgment motion or a cross-motion for summary

20  judgment. He did not. Accordingly, his motion for summary judgment is **DENIED** as

21  premature and as without merit.

22  ///

23  ————————————————

24  [1] In support of their motion, Defendants provide the declarations of Defendants Dr. Do-
Williams, (Docket No. 73), Dr. Kumar, (Docket No. 74), Dr. Dunlap, (Docket No. 77), Dr.

25  Gamboa, (Docket No. 78), Dr. R. Mack, (Docket No. 79), and Nurse Hanter, (Docket No.
80), as well as those of non-parties K. Robinson, (Docket No. 75), Dr. Murrell, (Docket

26  No. 76), and J. Nygaard, (Docket No. 81). Defendants provide authenticated copies of
Plaintiff's medical records in support of their summary judgment motion. (*See* Kumar

27  Decl., Ex. A.)

28  2

For the reasons discussed below, Defendants' summary judgment motion is **GRANTED**.

**DISCUSSION**

**I.** **Statement of Facts**[2]

    **A.** **Defendants**

Defendant Dr. Dunlap is the Deputy Medical Executive of California Correctional Health Care Services, ("CCHCS"), and was the Acting Chief Medical Executive at SVSP from November 12, 2013 to May 4, 2015. (Dunlap Decl. ¶ 2.)

Defendant Dr. Kumar is currently the Chief Medical Executive at SVSP, and the Chief Physician and Surgeon at SVSP from 2013 to May 2015. (Kumar Decl. ¶¶ 3-4.)

Defendant Dr. Gamboa is a physician at SVSP, who served as the Chief Physician and Surgeon at SVSP from June 15, 2015 to April 1, 2017. (Gamboa Decl. ¶ 2.)

Defendant Dr. Do-Williams is a telemedicine physician employed by CCHCS. (Do-Williams DEcl. ¶ 1.)

Defendant Dr. Mack was Plaintiff's primary care physician ("PCP") from approximately December 28, 2011, to March 1, 2013, and is no longer employed at SVSP. (Mack Decl. ¶¶ 2, 3.)

Defendant Hanter is a nurse practitioner and was previously employed at SVSP for six months. (Hanter Decl. ¶ 2.)

    **B.** **Psyllium-Powder Ban**

There are three main types of soluble-fiber supplements: psyllium, methylcellulose, and polycarbophil. (Murrell[3] Decl. ¶ 8.) All three are bulk-forming laxatives used to treat

---

[2] The following facts as presented by Defendants are undisputed because Plaintiff has not filed an opposition to Defendants' motion for summary judgment.

[3] Defendants submit the declaration of Dr. Zuri Murrell as an expert medical witness, who reviewed Plaintiff's medical records from the CDCR and relevant hospitals, CCHCS Formulary, and the CDCR Basic Menu Framework of the Regular Heart Healthy Diet, to give an opinion as to whether the discontinuation of psyllium powder was medically appropriate. (Murrell Decl. ¶ 3.)

constipation and contain soluble fiber that helps absorb water in the gut to improve regularity and make bowel movements easier. (*Id.*) Metamucil is a brand of psyllium powder, Citrucel is a brand of methylcellulose, and Fiber-Lax is a brand of polycarbophil. (*Id.*)

On October 30, 2013, CCHCS issued a memorandum temporarily banning the dispensing of psyllium powder at all CDCR institutions due to safety and security concerns. (Dunlap Decl. ¶ 4, Ex. A.) The memorandum referenced a Los Angeles County Sheriff's Department intelligence report describing a new tactic used by inmates to make weapons using psyllium powder. (*Id.*) Institutional staff were directed to discontinue all psyllium orders and obtain alternative medication orders if medically indicated. (*Id.*) CCHCS permanently banned psyllium powder on December 17, 2013. (Dunlap Decl. ¶ 5, Ex. B.)

Defendants assert that they played no role in the decision to ban psyllium powder. (Dunlap Decl. ¶ 6; Kumar Decl. ¶ 9; Gamboa Decl. ¶ 4; Do-Williams Decl. ¶ 1; Mack Decl. ¶ 4; Hanter Decl. ¶ 2.)

**C.     Dietary Fiber**

Consumption of fiber through food is the preferred way for a person to obtain the recommended daily amount of 25-30 grams of fiber. (Murrell Decl. ¶ 6.)

The CDCR "heart-healthy" menu served to all inmates, except those on special medical or religious diets, provides approximately 38 grams of fiber a day through three and a half cups of vegetables and two cups of fruit. (Robinson Decl. ¶ 3, Ex. A at DEF001451.) This diet exceeds the recommended daily amount of fiber of 25-30 grams. (Murrell Decl. ¶ 9.) Plaintiff is not on a special medical or religious diet, and thus receives the standard hearth-healthy meal. (Kumar Decl. ¶ 19.)

**D.     Plaintiff's Relevant Medical Treatment**

Plaintiff underwent hemorrhoid surgery on July 5, 2012. (Kumar Decl. ¶ 7, Ex. A at DEF000151-53.) The surgeon, Dr. Palmer, recommended that Plaintiff receive psyllium

4

United States District Court
Northern District of California

powder three times a day.  (*Id.* at DEF000152.)  At a post-operative follow-up appointment

on August 31, 2012, Dr. Palmer recommended that Plaintiff continue to receive psyllium

powder three times a day.  (*Id.* at DEF000196.)  At his deposition, Dr. Palmer clarified that

Plaintiff did not specifically need psyllium fiber, and that any fiber would work.

(Nygaard[4] Decl., Ex. A at 38:7-10.)

Plaintiff regularly received psyllium powder until mid-October of 2013.  (Kumar

Decl. ¶ 8, Ex. A at DEF000262, 264, 267, 276, 278, 281, 299, 307-08, 310-12, 329-32,

334-36, 339-42, 349-51, 353-356, 359.)  Psyllium powder was banned shortly thereafter,

first temporarily on October 30, 2013, and then permanently on December 17, 2013.

(Dunlap Decl. ¶¶ 4-5, Exs. A, B.)

Before the ban, psyllium powder was classified as a non-formulary drug.  (Kumar

Decl. ¶ 10.)  When a physician recommends that an inmate receive a non-formulary drug,

they must submit a Non Formulary Drug Request.  (*Id.*)  The Chief Medical Executive or

Chief Physician and Surgeon reviews the request, and either approves or disapproves it.

(*Id.*)

Defendant Dr. Kumar, as Chief Physician and Surgeon, reviewed a January 18,

2013 request by Defendant Dr. Mack for non-formulary psyllium powder.  (Kumar Decl. ¶

10.)  Somehow, Defendant Kumar received two copies of the request form.  (*Id.*)  On one

form, Defendant Kumar placed an "X" in the box next to "Disapproved," and noted that

alternatives should be used.  (*Id.*, Ex. A at DEF000258.)  On the other form, Defendant

Kumar placed an "X" in the box next to "Approved," but then scratched out the "X," drew

a diagonal line through the form, and wrote "duplicate."  (*Id.*, Ex. A at DEF000259.)

Defendant Kumar's intention was to deny the non-formulary request, and to have

Defendant Mack pursue alternative treatments.  (*Id.* ¶ 10.)  The pharmacy, however,

---

[4] Defendants submit the declaration of J. Nygaard, deputy attorney general, who conducted the depositions of Dr. B. M. Palmer and Dr. M. Tabbaa, along with excerpts from the transcripts of those depositions as exhibits.  (Nygaard Decl., Exs. A, B.)

1    continued to administer psyllium powder until October 1, 2013, when Plaintiff received a

2    final ten-day supply.  (*Id.*, Ex. A at DEF000262, 264, 267, 276, 278, 281, 299, 307-08,

3    310-12, 329-32, 334-36, 339-42, 349-51, 353-356, 359.)

4        For the first time on September 27, 2013, Plaintiff was prescribed a thirty-day

5    supply of calcium polycarbophil tablets (fiber-lax).  (Kumar Decl. ¶ 11, Ex. A at

6    DEF000357, 365.)  Plaintiff sought no medical treatment for an allergic reaction to the

7    fiber-lax tablets after receiving them on September 27, 2013, yet he twice sought medical

8    care for unrelated issues over the following three weeks.  (*Id.*, Ex. A at DEF000366, 377.)

9    He was seen by registered nurses in response to each request, but there is no indication that

10   he reported any type of allergic reaction to fiber-lax to the nurses.  (*Id.*, Ex. A at

11   DEF000367-69, DEF000378-80.)  On October 30, 2013, however, Dr. Birdsong noted an

12   allergy to fiber-lax on a medication-reconciliation form, but there is nothing in Dr.

13   Birdsong's progress notes to indicate that Plaintiff experienced an allergic reaction to

14   fiber-lax.[5]  (*Id.*, Ex. A at DEF000382-84.)  An allergy causes a potentially life-threatening

15   autoimmune reaction, and includes symptoms such as hives, rash, itching, vomiting, chest

16   pain, trouble breathing, or trouble swallowing.  (Murrell Decl. ¶ 10; Kumar ¶ 11; Do-

17   Williams Decl. ¶ 3.)  Abdominal pain and cramping are not allergic reactions, but more

18   likely unpleasant side effects to bulking fiber, such as fiber-lax.  (*Id.*)  The same side

19   effects can be experienced taking psyllium powder.  (*Id.*)  Other than Dr. Birdsong's single

20   notation, there is no indication in Plaintiff's medical records that he has ever experienced

21   an allergic reaction to fiber-lax.  (*Id.*)

22       Defendant Dr. Do-Williams's first encounter with Plaintiff was a telemedicine visit

23   on December 5, 2014.  (Do-Williams Decl. ¶ 2; Kumar Decl., Ex. A at DEF000480-82.)

24   The primary purpose of this appointment was to address an inmate appeal in which

25   Plaintiff requested reinstatement of his previous prescription for psyllium powder.  (*Id.*)

26

27   _____

[5] Defendant Kumar states that Dr. Birdsong died in 2017, and he was therefore unable to confer with him about this issue.  (Kumar Decl. ¶ 11.)

28                                                        6

Defendant Do-Williams explained to Plaintiff that psyllium powder was banned from CDCR institutions, and that natural fiber found in food works the same way. (*Id.*) Defendant Do-Williams advised Plaintiff that increasing his consumption of fruits and vegetables would be a good way for him to receive fiber. (*Id.*) However, Plaintiff was not interested in talking about food and said that he would keep writing to the court to obtain psyllium. (*Id.*)

Defendant Do-Williams noted that it was documented in Plaintiff's medical record that he had an allergy to fiber capsules, with the explanation that fiber capsules cause him abdominal pain and cramping. (Do-Williams Decl. ¶ 3.) In Defendant Do-Williams's professional opinion, the medical record incorrectly identified an allergy to fiber capsules based on an incorrect assessment. (*Id.*) She opined that incorrect assessments can lead to mistreatments, medical errors, and missed opportunities for treatments. (*Id.*) Therefore, Defendant Do-Williams ordered the removal of fiber capsules from Plaintiff's allergy list. (*Id.*; Kumar Decl., Ex. A at DEF000483.)

Although Plaintiff insisted that he must receive psyllium powder rather than fiber capsules, Defendant Do-Williams thought that psyllium powder, even if it had not been banned, would likely cause him to experience the same side effects that the fiber capsules had, as any bulking agent would work the same way. (Do-Williams Decl. ¶ 3.) Moreover, Defendant Do-Williams determined that there was no medical necessity for Plaintiff to receive psyllium powder because he could obtain the same fiber benefits from food. (*Id.*) Defendant Do-Williams also prescribed an antacid chew for heartburn. (*Id.*; Kumar Decl., Ex. A at DEF000484.)

Defendant Do-Williams's next and last encounter with Plaintiff was a telemedicine visit on January 21, 2015. (Do-Williams Decl. ¶ 4; Kumar Decl., Ex. A at DEF000489-91.) The primary purpose of this appointment was to address an inmate appeal in which Plaintiff requested to be seen by a specialist for a liver biopsy. (*Id.*) Plaintiff reported that he had been having pain in his right abdomen for at least three years but refused to discuss

1  details regarding his bowel movements or provide any further description of the pain. (*Id.*)

2  There was no discussion regarding Plaintiff's previous request for psyllium powder at this

3  appointment, and Defendant Do-Williams again saw no medical need for it. (*Id.*) Plaintiff

4  was adamant about receiving a biopsy and Defendant Do-Williams found it difficult to

5  discuss other issues with him. (*Id.*) When Defendant Do-Williams explained to Plaintiff

6  that a biopsy was not medically indicated, he appeared to become upset, and walked out of

7  the exam room stating that he was doing so because his request for a liver biopsy had been

8  unfulfilled. (*Id.*)

9       Defendant Gamboa approved a gastroenterology referral in his capacity as Chief

10  Physician and Surgeon on October 20, 2015. (Gamboa Decl. ¶ 5; Kumar Decl., Ex. A at

11  DEF000532.) This was Defendant Gamboa's first involvement with Plaintiff's medical

12  treatment following the psyllium-powder ban. (*Id.*)

13      Defendant Nurse Hanter met with Plaintiff on April 21, 2015. (Hanter Decl. ¶ 4;

14  Kumar Decl., Ex. A at DEF000510-12.) The purpose of this appointment was to examine

15  and interview Plaintiff in response to an inmate appeal that he had submitted requesting

16  that his fiber-tablet allergy be replaced in his medical file, and that Defendant Do-Williams

17  be audited, suspended, banned, and discharged from employment at CDCR. (Hanter Decl.

18  ¶ 4; Kumar Decl., Ex. A at DEF000510.) Defendant Hanter examined Plaintiff and noted

19  that he appeared to be a well-nourished and well-developed male. (Hanter Decl. ¶ 4;

20  Kumar Decl., Ex. A at DEF000511.) When Defendant Hanter examined Plaintiff's

21  abdomen, he observed no abnormal enlargement of the organs, and heard positive bowel

22  sounds in all quadrants of the abdomen, which is normal. (*Id.*) Defendant Hanter noted

23  that Plaintiff was ambulatory, functional, and in no apparent distress. (*Id.*) During this

24  encounter, Plaintiff also requested psyllium powder. (Hanter Decl. ¶ 4; Kumar Decl., Ex.

25  A at DEF000510-11.) Defendant Hanter explained that psyllium powder was banned at

26  CDCR institutions for safety and security reasons. (*Id.*) Plaintiff reported that he was

27  aware of the ban, and that he had filed a lawsuit to receive it. (*Id.*) Although Plaintiff

28

8

1    claimed to be experiencing diarrhea, he appeared fully functional to Defendant Hanter,

2    with no signs of toxicity or dehydration.  (*Id.*)  Defendant Hanter determined that there was

3    no medical necessity for Plaintiff to receive psyllium powder and denied the request.  (*Id.*)

4    Defendant Hanter also referred him for a follow-up appointment with his primary care

5    provider in sixty to ninety days.  (Hanter Decl. ¶ 4; Kumar Decl., Ex. A at DEF000512.)

6    This was Defendant Hanter's only encounter with Plaintiff.  (*Id.*)

7         Plaintiff was seen by Dr. Tabbaa, a gastroenterologist at Natividad Medical Center

8    who is not a party to this action, on December 23, 2015.  (Kumar Decl. ¶ 13, Ex. A at

9    DEF000551-53.)  Dr. Tabbaa diagnosed Plaintiff with constipation.  (*Id.*, Ex. A at

10   DEF000552.)  He recommended resuming psyllium, if available at the prison, but also

11   indicated that five servings of vegetables or fruit could provide Plaintiff with enough

12   natural fibers.  (*Id.*)  At his deposition, Dr. Tabbaa testified that if a person gets enough

13   fiber in their diet, there may be no need for a fiber supplement.  (Nygaard Decl., Ex. B at

14   53:25, 54:1-3.)  Dr. Tabbaa also testified that he would not have told Plaintiff that he

15   would be required to take psyllium for the rest of his life because Dr. Tabbaa will always

16   try to correct his patients' diets so that they do not need medicine.  (*Id.*, Ex. B at 53:17-23.)

17   Dr. Tabbaa also recommended a stool softener, such as Colace, twice a day, and colonic

18   cleansing with GoLYTLEY.  (Kumar Decl. ¶ 13, Ex. A at DEF000552.)  As an off-site

19   physician, Dr. Tabbaa did not have the authority to order medications for CDCR inmates

20   and could only make recommendations.  (*Id.* ¶ 13.)  Because psyllium was banned, the

21   medical providers at SVSP could not follow Dr. Tabbaa's recommendation for psyllium,

22   but they alternatively prescribed docusate sodium, a stool softener used to treat and prevent

23   constipation due to hard stools, cortisone suppositories for control of internal hemorrhoids,

24   and lactulose, a medication used to treat constipation.  (*Id.*, Ex. A at DEF000561-62,

25   DEF000596.)  Plaintiff was also prescribed GoLYTLEY and Colace, as Dr. Tabbaa

26   recommended.  (*Id.* at DEF000558.)

27        About five months later on May 16, 2016, Plaintiff saw Dr. Tabbaa for a follow-up

28                                              9

visit.  (Kumar Decl. ¶ 14, Ex. A at DEF000610-11.)  Dr. Tabbaa recommended continuing Plaintiff on the lactulose and prescribing psyllium.  (*Id.*, Ex. A at DEF000611.)  Dr. Tabbaa testified at his deposition, however, that there are many other fiber medications that will work, not just psyllium.  (Nygaard Decl., Ex. B at 54:6-13.)  Again, the medical providers at SVSP could not follow Dr. Tabbaa's recommendation for psyllium as it was banned, but they continued to prescribe lactulose, docusate sodium, and cortisone suppositories, as well as prescribing bisacodyl, a stimulant laxative used to treat constipation.  (Kumar Decl. ¶ 14, Ex. A at DEF000618-19, 21.)  Although Plaintiff alleges that Defendants Kumar, Mack, and Hanter "rewrote" Dr. Tabbaa's prescription for fiber-lax following this appointment, neither Defendant Hanter nor Defendant Mack were still employed at SVSP as of May 16, 2016, and therefore, did not rewrite any such prescription.  (Mack Decl. ¶ 5; Hanter Decl. ¶ 5.)  Plaintiff was next prescribed fiber-lax on October 3, 2016, by Dr. Birdsong not Defendant Kumar.  (Kumar Decl. ¶ 12, Ex. A at DEF000663-64, 68.)  After Plaintiff refused to take the fiber-lax, the prescription was last filled on March 23, 2017.  (*Id.*, Ex. A at DEF000766.)

Defendant Gamboa approved another gastroenterology referral on March 3, 2017. (Gamboa Decl. ¶ 7; Kumar Decl., Ex. A at DEF000748.)  Plaintiff was then seen again by Dr. Tabbaa on April 5, 2017, who noted "no emergency today."  (Kumar Decl. ¶ 15, Ex. A at DEF00765.)  The medical providers at SVSP continued to prescribe lactulose and cortisone suppositories, as well as prescribing a topical hydrocortisone cream.  (*Id.*, Ex. A at DEF000769.)  Although Plaintiff expressed hesitation to take lactulose because he did not want to gain weight, weight gain is not a side effect of lactulose.  (Murrell Decl. ¶ 11; Nygaard Decl., Ex. B at 42:7-9.)

Plaintiff was seen by Dr. Ibrahimi, a non-party to this action, on August 30, 2017. (Kumar Decl. ¶ 16, Ex. A at DEF000790-91.)  Dr. Ibrahimi noted that Plaintiff had reportedly experienced abdominal cramps, bloating, and discomfort from fiber-lax.  (*Id.* ¶ 16, Ex. A at DEF000790.)  Dr. Ibrahimi noted that this is not an allergic reaction, but

rather an adverse reaction.  (*Id.*)  Plaintiff denied experiencing hives, itching, or shortness of breath when he takes fiber supplements.  (*Id.*)  These would be symptoms of a true allergic reaction.  (*Id.* ¶ 16; Murrell Decl. ¶ 10.)  Dr. Ibrahimi prescribed methylcellulose (Citrucel).  (Kumar Decl. ¶ 16, Ex. A at DEF000794; Murrell Decl. ¶ 8.)

Defendant Gamboa then saw Plaintiff on December 19, 2017, for an appointment following a colonoscopy Plaintiff had recently undergone.  (Gamboa Decl. ¶ 8; Kumar Decl., Ex. A at DEF001190-91.)  The colonoscopy results revealed a normal colon.  (*Id.*)  Tissue samples were taken for biopsy during the colonoscopy, but Defendant Gamboa had not received the results.  (*Id.*)  Plaintiff reported that he still experienced on-and-off colicky abdominal pain and diarrhea.  (Gamboa Decl. ¶ 8; Kumar Decl., Ex. A at DEF001190.)  Defendant Gamboa noted that Plaintiff was currently taking lactulose (a medication used to treat constipation), and methylcellulose.  (*Id.*)  Defendant Gamboa continued those prescriptions as well as Bentyl, a medication used in the treatment of irritable bowel syndrome.  (Gamboa Decl. ¶ 8; Kumar Decl., Ex. A at DEF001122.)

Defendant Gamboa saw Plaintiff on January 6, 2018, to discuss the biopsy results. (Gamboa Decl. ¶ 9; Kumar Decl., Ex. A at DEF001264-65.)  The tissue samples revealed no evidence of acute colitis, dysplasia, or malignancy.  (Gamboa Decl. ¶ 9; Kumar Decl., Ex. A at DEF001264.)  Defendant Gamboa conducted a rectal exam and noted the presence of a rectal cyst skin tag.  (Gamboa Decl. ¶ 9; Kumar Decl., Ex. A at DEF001265.) He also observed tenderness to the right and anterior perirectal areas, but palpated no abnormal masses, and noted no gross blood.  (*Id.*)  Plaintiff requested to see a specialist again for his diarrhea and rectal bleeding, and Defendant Gamboa submitted a request for referral to a gastroenterologist which was approved.  (Gamboa Decl. ¶ 9; Kumar Decl., Ex. A at DEF001265, DEF001267.)

Plaintiff was seen by Dr. Virant, a non-party to this action, on June 19, 2018. (Kumar Decl. ¶ 17, Ex. A at DEF001343.)  Dr. Virant had previously recommended that Plaintiff keep a food diary and follow an elimination diet, such as avoiding dairy for two

weeks, and noted that Plaintiff had not really done so. (*Id.*) Dr. Virant again recommended that Plaintiff keep a food diary with associated symptoms and suggested that he try eliminating certain foods from his diet for two weeks, including dairy, coffee, gluten, and eggs, to see if there is any improvement of his symptoms. (*Id.* at DEF001344.) Dr. Virant noted that Plaintiff had been eating a lot of oatmeal, which Plaintiff thought had improved his symptoms. (*Id.*) Oatmeal is a fiber-rich food. (Kumar Decl. ¶ 17.) Dr. Virant also noted that anxiety could be playing a factor and referred him to psychiatry. (*Id.*, Ex. A at DEF001344.)

Plaintiff was most recently seen by Dr. Huynh on December 10, 2018. (*Id.* ¶ 18; Ex. A at DEF1467-68.) Plaintiff stated that he did not want to go over his detailed history of chronic diarrhea, and again insisted that the only thing that brings him relief is Metamucil, and that he has brought this lawsuit to obtain it. (*Id.* at DEF001468.) Plaintiff continues to be prescribed methylcellulose. (*Id.*)

### E. <u>Defendant Dr. Dunlap</u>

As the acting Chief Medical Executive at SVSP, Defendant Dunlap had minimal involvement in providing direct patient care. (Dunlap Decl. ¶ 3.) Defendant Dunlap was not Plaintiff's primary care physician, or treating physician, and does not recall any in-person interactions with Plaintiff. (*Id.*) Defendant Dunlap was not responsible for Plaintiff's day-to-day medical care, and does not believe that he consulted with, or directly supervised, Plaintiff's primary care physicians. (*Id.*)

### F. <u>Claims</u>

According to the allegations in the second amended complaint, Plaintiff was prescribed psyllium by Dr. Palmer following surgery in June 2012; the prescription was effective. (SAC at 3.) Plaintiff claims that in December 2013, Defendants "conspired and agreed to stop issuing psyllium regardless of the medical need." (*Id.*) Plaintiff asserts that Defendants substituted psyllium with fiber-lax, ignoring the fact that his medical records indicated that he was allergic to it. (*Id.*) When he filed an administrative appeal on the

matter, Defendant Do-Williams ordered that fiber-lax be removed from Plaintiff's list of known allergies. (*Id.*) When Dr. Palmer wrote a new order for psyllium in May 2014, Defendants ignored that order and replaced it with fiber-lax. (*Id.*) When Dr. Tabbaa prescribed psyllium in December 2014, Defendants again ignored the order and substituted fiber-lax. (*Id.* at 4.) Plaintiff claims that Defendants "acted intentionally and deliberately with the full knowledge that by withholding the prescribed psyllium the consequences would be harmful and injure the plaintiff." (*Id.* at 5.) Based on these allegations, the Court found Plaintiff stated a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs. (Docket No. 47 at 3.) The Court exercised supplemental jurisdiction over Plaintiff's state claim for intentional infliction of emotional distress. (*Id.*)

## II.    Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

13

than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.  <u>Deliberate Indifference</u>

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent

14

to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, *McGuckin*, 974 F.2d at 1060, 1061 (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")), but the existence of serious harm tends to support an inmate's

15

deliberate indifference claims, *Jett v. Penn*er, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin*, 974 at 1060).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).

### 1.   <u>Ban of Psyllium Powder</u>

The evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against Defendants for discontinuing psyllium powder and replacing it with other fiber supplements. Assuming Plaintiff's medical condition was "serious," he fails to satisfy the second prong, i.e., that Defendants were subjectively, deliberately indifferent to his medical needs because they failed to take reasonable steps to abate a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834, 837. As Defendants point out, the undisputed evidence shows that CCHCS implemented a statewide policy banning the distribution of psyllium powder to all inmates, first temporarily on October 30, 2013, and then permanently effective December 17, 2013. *See supra* at 4. According to their declarations, none of the Defendants had any role in the decision to ban psyllium powder. *Id.* Plaintiff has set forth no evidence in opposition to indicate otherwise. Accordingly, Defendants have shown that there is no genuine dispute as to any material fact with respect to the claim that they "conspired and agreed" to withhold psyllium regardless of the medical need where there is no evidence that they were involved in the decision to ban psyllium powder. Furthermore, it cannot be said that Defendants acted with deliberate indifference in complying with the ban where "alternative medication orders" could be made if medically indicated. *See supra* at 4.

16

1    Since alternative fiber supplements were available, it cannot be said that Defendants were

2    aware of a substantial risk to Plaintiff when they complied with the ban. *See Farmer*, 511

3    U.S. at 837. Therefore, Defendants are entitled to summary judgment on this claim. *See*

4    *Celotex Corp.*, 477 U.S. at 323-24.

5            Defendants have also shown that there is no genuine dispute as to any material fact

6    with respect to the claim that they "intentionally and deliberately" withheld psyllium

7    knowing that the consequences would be harmful to Plaintiff. According to the evidence

8    submitted by Defendants, Plaintiff can obtain the same benefits from the fiber-rich food in

9    the standard heart healthy diet he receives in prison. *See supra* at 4. The recommended

10   daily about of fiber is 25-30 grams. *Id.* The prison's heart healthy diet provided

11   approximately 38 grams of fiber a day, which exceeds the recommended daily amount. *Id.*

12   Furthermore, consumption of fiber through food is the preferred way for a person to obtain

13   the recommended daily amount of fiber. *Id.* Accordingly, based on the diet he was

14   already receiving, Defendants had no reason to believe that Plaintiff would not be able to

15   receive adequate fiber if psyllium was no longer available.

16           Plaintiff asserts that Dr. Palmer and Dr. Tabbaa repeatedly prescribed psyllium

17   powder, but that Defendants wrongfully changed those orders. However, Defendants

18   submit evidence showing that psyllium was not medically necessary. Dr. Palmer and Dr.

19   Tabbaa stated in their depositions that psyllium powder specifically was not necessary, and

20   that Plaintiff could obtain fiber through other fiber supplements or by eating enough fruits

21   and vegetables daily. *Id.* at 5, 7. In addition, none of the Defendants who personally

22   treated Plaintiff thought psyllium was medically necessary. Defendant Do-Williams

23   informed Plaintiff that natural fiber found in food works in the same way as the psyllium

24   powder supplement he sought. *Id.* at 6. Defendant Gamboa also never determined that

25   psyllium powder was the only medically-appropriate treatment for Plaintiff and prescribed

26   alternative medications to treat his symptoms. (Gamboa Decl. ¶ 10.) Defendant Hanter

27   examined Plaintiff and found that there was no medical necessity for Plaintiff to receive

28

psyllium powder. *See supra* at 8-9.

Furthermore, the Court agrees with Defendants that Plaintiff's insistence that psyllium was the only acceptable treatment is at most a difference of opinion about the course of treatment between him and Defendants. (Defs.' MSJ at 16.) Such a difference of opinion between a physician and prisoner regarding treatment does not rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344. In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Here, there is no disagreement between alternative courses of treatment even among the treating physicians. Rather, even Dr. Palmer and Dr. Tabbaa, who originally prescribed psyllium, agree with Defendants and their expert witness that psyllium powder was not exclusively required, and that fiber could be ingested in other ways. *See supra* at 17. Accordingly, Plaintiff has failed to show that the course of treatment Defendants chose instead – fiber-rich diet, alternative fiber supplements, laxatives, stool softeners, and other medications – was medically unacceptable.

## 2.    Allergy to Fiber-Lax

Plaintiff claims that he is allergic to fiber-lax, that Defendants knew this fact, and therefore acted with deliberate indifference in continuing to prescribe it anyway. However, the only evidence that Plaintiff had an allergy to fiber-lax is the single notation by Dr. Birdsong on October 30, 2013. *See supra* at 6. However, as Defendants point out, Dr. Birdsong's notes fail to indicate that Plaintiff actually experienced any allergic reaction to fiber-lax, e.g., hives, rash, itching, vomiting, chest pain, trouble breathing, or trouble swallowing. *Id.* Rather, Plaintiff complained of abdominal pain and cramping. *Id.* All the medical opinions submitted in this action agree that such symptoms are more likely unpleasant side effects to the fiber-lax rather than allergic reactions. *Id.* Plaintiff has filed

no opposition or any evidence indicating otherwise. Accordingly, Defendants have shown that there is no genuine dispute as to any material fact with respect to the claim that Defendant Do-Williams incorrectly removed fiber-lax from Plaintiff's list of known allergies where there was no medical indication that he indeed had such an allergy. Rather, Defendant Do-Williams acted because she believed the identification of fiber capsules as an allergy was based on an incorrect assessment which "can lead to mistreatments, medical errors, and missed opportunities for treatment." *See supra* at 7. Accordingly, it cannot be said that Defendant Do-Williams acted with deliberate indifference to Plaintiff's medical needs where her actions were intended not to harm but to rectify an error.

Plaintiff also claims that Defendants Kumar and Gamboa substituted fiber-lax on December 17, 2013, ignoring documentation in his medical records that he was allergic to it, and that they rewrote Dr. Tabbaa's prescriptions for psyllium as fiber-lax. (SAC at 3, 4.) Plaintiff also claims that Defendants Mack and Hanter rewrote Dr. Tabbaa's May 16, 2016 prescription. (*Id.* at 4.) Lastly, Plaintiff alleges that Defendant Kumar intercepted a non-defendant physician's prescription for psyllium, drew a line through it, and ordered fiber-lax in spite of the allergy warning in his medical records. (*Id.* at 3.) Defendants argue that these allegations are contradicted by the evidence.

First of all, Defendants Mack and Hanter did not work at SVSP on May 16, 2016, and therefore did not and could not have rewritten the prescription issued by Dr. Tabbaa on that date. (Mack Decl. ¶ 5; Hanter Decl. ¶ 5.) Secondly, Defendants Kumar and Gamboa never write a prescription for fiber-lax for Plaintiff. Dr. Sullivan, a non-party, first prescribed fiber-lax on September 27, 2013. (Kumar Decl. ¶ 11, Ex. A at DEF000357, 365.) The next prescription for fiber-lax was written by Dr. Birdsong on October 3, 2016. (*Id.* ¶ 12, Ex. A at DEF000663, 68.) After Plaintiff refused to take the fiber-lax, the prescription was last filled on March 23, 2017. (*Id.*, Ex. A at DEF000766.) Lastly, there is no evidence that Defendant "intercepted" a prescription for psyllium as Plaintiff alleges.

19

Defendant Kumar did process a January 18, 2013 request by Defendant Mack for approval of psyllium when it was classified as a non-formulary drug which required her approval as Chief Physician and Surgeon. (Kumar Decl. ¶ 10.) As described above, she received two copies of the request form and marked them differently. *See supra* at 5-6. Her intention was to deny the non-formulary request and have Defendant Mack pursue alternative treatments. *Id.* However, the pharmacy continued to administer psyllium until October 1, 2013, when Plaintiff received a ten-day supply. *Id.* Otherwise, there is no evidence, and Plaintiff does not submit any, that Defendant Kumar prescribed fiber-lax to Plaintiff.

In conclusion, there is no evidence that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. As Defendants have shown, Plaintiff was seen regularly throughout the relevant time period, *i.e.*, mid-2012 through 2018, and received continuous medical care for his gastroenterological needs. Furthermore, any difference of opinion in the course of treatment with Defendants, as mentioned above, does not give rise to a § 1983 claim. *See* supra at 17-18; *Franklin*, 662 F.2d at 1344.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 323. Even considering Plaintiff's evidence and argument submitted in his motion to summary judgment, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

## B.    State Law Claim

Because the Court has granted summary judgment with respect to Plaintiff's deliberate indifference claims against Defendants, the only claim remaining against them is Plaintiff's state claim for intentional infliction of emotional distress. The Court decided to exercise supplemental jurisdiction at the outset of the action over this state claim because

1   Plaintiff's state-law and federal-law claims derived from a common nucleus of operative

2   fact such that they form part of the same case or controversy.  *See United Mine Workers v.*

3   *Gibbs*, 383 U.S. 715, 725 (1966).

4       A federal court has supplemental jurisdiction over claims "that are so related to

5   claims in the action within [the district court's] original jurisdiction that they form part of

6   the same case or controversy under Article III."  28 U.S.C. § 1367(a).  A district court,

7   however, may decline to exercise supplemental jurisdiction over a claim if (1) the claim

8   raises novel or complex state law issues; (2) the claim "substantially predominates" over

9   the court's original-jurisdiction claims; (3) the court has dismissed all of the original-

10  jurisdiction claims; or (4) in "exceptional circumstances" if there are "other compelling

11  reasons" to decline.  28 U.S.C. § 1367(c).  In particular, "[n]eedless decisions of state law

12  should be avoided both as a matter of comity and to promote justice between the parties,

13  by procuring them a surer-footed reading of applicable law."  *Gibbs*, 383 U.S. at 726.

14      Here, Plaintiff's tort claim is based solely on state law and should be adjudicated in

15  state court where the parties can be assured of a "surer-footed reading of application law."

16  *Id.*  Specifically, the Court finds that declining supplemental jurisdiction is appropriate

17  under § 1367(a)(3) because the Court has dismissed all of the original-jurisdiction claims.

18  Accordingly, the Court will decline to assert supplemental jurisdiction over the remaining

19  state law claim.  28 U.S.C. § 1367(a)(3).  The state law claim against these Defendants will

20  be dismissed without prejudice[6] to Plaintiff's refiling the claim in state court in accordance

21  with the statutory tolling provision set forth at 28 U.S.C. § 1367(d).  *See id.* ("The period

22  of limitations for any claim asserted under subsection (a), and for any other claim in the

23  same action that is voluntarily dismissed at the same time as or after the dismissal of the

24  claim under subsection (a), shall be tolled while the claim is pending and for a period of 30

25

26  _____

27  [6] Dismissal of pendent state claims following dismissal of the related federal claims must
    be without prejudice.  *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir.
    1996).

28

days after it is dismissed unless State law provides for a longer tolling period."). Whether or not the claim is barred, as Defendants assert, can be adjudicated in state court. (Defs.' MSJ at 19.)

## C.   Unserved Defendants

Defendants Ellen Greenman, MD, and Kathryn Graham have not been served in this action although it was so ordered in the Court's screening order of the second amended complaint and then again separately in a subsequent order. (Docket Nos. 47, 58.) According to the second amended complaint, Defendants Greenman and Graham worked in the pharmacy and were responsible for issuing Plaintiff medications prescribed by physicians. (SAC at 2.) Plaintiff claims that these two Defendants conspired with Defendants Mack, Kumar, Gamboa, and Dunlap on December 17, 2013, to stop issuing psyllium regardless of the medical need. (*Id.* at 3.) Plaintiff also claims Defendants were allegedly involved in overriding the following prescriptions for psyllium with fiber-lax: a prescription issued on May 5, 2014 by Dr. Palmer, and two by Dr. Tabbaa issued on December 23, 2014, and May 16, 2016. (*Id.* at 3-4.)

Summary judgment may be granted by the court *sua sponte* in favor of a nonappearing party on the basis of facts presented by other defendants who have appeared. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir.) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant), cert. denied, 516 U.S. 864 (1995); *see also Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court on its own motion may grant motion to dismiss as to defendants who have not

moved to dismiss where such defendants are in a position similar to that of moving defendants).

Here, Defendants Greenman and Graham are in positions similar to served Defendants who have shown that that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference claim. *See supra* at 20. First of all, Defendants have submitted evidence establishing that the decision to permanently ban psyllium on December 17, 2013, was made by the CCHCS, and that all institutional staff was directed to discontinue all psyllium orders and obtain alternative medication orders if medically indicated. *See supra* at 4. Accordingly, there is no evidence of a conspiracy "to stop issuing psyllium regardless of the medical need" by the Defendants, including Defendants Greenman and Graham. Furthermore, with respect to the overriding of prescriptions for psyllium issued by Dr. Palmer and Dr. Tabbaa, both these doctors testified in deposition that psyllium powder was not medically necessary and that there were other means of ingesting fiber. *See supra* at 5, 7, and 17. Accordingly, even if it were true that Defendants Greenman and Graham overrode psyllium prescriptions with fiber-lax, Plaintiff cannot show that they did so knowing that he would face a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. Rather, the medical records indicate that after Plaintiff received a thirty-day supply of fiber-lax on September 27, 2013, there was no report of any allergic reaction, and that Plaintiff only sought medical care for unrelated issues over the following three weeks. Therefore, it cannot be said that Defendants acted with deliberate indifference when they allegedly changed Dr. Palmer's May 5, 2014 prescription for psyllium to fiber-lax when there was no indication that it was harming Plaintiff. *See supra* at 6. Furthermore, fiber-lax was removed from Plaintiff's list of known allergies in early December 2014. *Id.* at 7. Accordingly, it cannot be said that Defendants Greenman and Graham thereafter continued to replace psyllium prescriptions with fiber-lax knowing it would create an excessive risk of harm to Plaintiff.

23

Based on a thorough review of the evidence submitted by Defendants, the Court finds that Plaintiff has failed to show that Defendants acted with deliberate indifference to his gastroenterological needs, specifically in discontinuing psyllium and issuing other fiber supplements. As discussed above, all the physicians, both parties and non-parties to this action, agree that psyllium powder was not the exclusive means for Plaintiff to ingest fiber. *See supra* at 18. Accordingly, the Court *sua sponte* grants summary judgment in favor of Defendants Greenman and Graham on the basis of facts presented by other Defendants who have appeared, showing that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference claim with respect to his gastroenterological needs. *See Columbia Steel Fabricators*, 44 F.3d at 802-03.

## CONCLUSION

For the reasons stated above, Defendants Richard Mack, Dr. K. Kumar, Dr. D. Do-Williams, Dr. J. Dunlap, Dr. L. Gamboa, and Nurse H. Hanter's motion for summary judgment, (Docket No. 71), is **GRANTED**.[7] The claims against them are **DISMISSED** with prejudice. Plaintiff's motion for summary, (Docket No. 41), is **DENIED**.

Because unserved Defendants Ellen Greenman and Kathryn Graham are in a position similar to the Defendants who have appeared in this action, summary judgment is also granted in their favor. The claims against them are **DISMISSED** with prejudice.

This order terminates Docket Nos. 41 and 71.

**IT IS SO ORDERED.**

**Dated:**  March 5, 2019

BETH LABSON FREEMAN
United States District Judge

Order Granting Defs.' Motion for Summary Judgment
PRO-SE\BLF\CR.17\00595Indiveri_grant-msj

---

[7] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument. (Defs.' MSJ at 20.) Nor is it necessary to discuss the mootness of Plaintiff's request for injunctive relief. (*Id.* at 19-20.)

24